# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

LA CROSSE COUNTY, individually, and on
behalf of all others similarly situated,

        Plaintiff,

    vs.                        Case No. 3:15-cv-00117-SLC

TRINITY INDUSTRIES, INC. and TRINITY
HIGHWAY PRODUCTS, LLC,

        Defendants.

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT PURSUANT TO RULES 12(b)(1) AND 12(b)(6)

## INTRODUCTION

There is an extensive factual record revealing the underlying and admitted fraudulent conduct that has led to a Final Judgment in favor of the U.S. government for over $663 million in a *qui tam* action against the same Defendants here: *United States ex rel. Joshua Harman v. Trinity Indus., Inc. et al.*, 12-dv-00089-JPG (E.D. Tex) (hereinafter "*Harman*"). While this substantial sum was recovered for the U.S. government, nothing was recovered for other entities, like Plaintiff, that purchased these ET-Plus guardrails. As aptly stated by the Court in *Harman* just last month:

> From 2005 until the present, Defendants consistently and knowingly misrepresented to the purchasers of the ET-Plus that the product had been approved by the FHWA. That was false. Trinity Highways [sic] Products

President, Greg Mitchell, admitted under oath that these certifications were "not accurate" and "not correct."[1]

These same facts support the claims asserted by Plaintiff in the Amended Complaint ("Complaint"), as Plaintiff was one of those "purchasers of the ET-Plus."  But with wholesale disregard for the mountain of evidence against it, Defendants unabashedly challenge the Complaint here under Rule 9(b).  The Complaint details the scheme and provides citations to actual documents and trial testimony of Defendants' own witness from *Harman*.  It appears Defendants have picked up where they left off in *Harman*, asserting arguments that "in the face of **their own witnesses' testimony**, makes the Court wonder about Trinity's underlying candor."[2]

Even here, Defendants' efforts to obtain an early dismissal of this case are  wrought with inconsistent arguments.  Defendants seek dismissal because Plaintiff failed to allege damages, but in other arguments Defendants maintain Plaintiff has alleged damages that are solely economic.  Similarly, Defendants claim no actual controversy exists for the Declaratory Judgment Act claim, but contend the June 17 letter from the Federal Highway Administration ("FHWA") represents continuous authorization of the ET-Plus guardrail.  Ironically, the *Harman* Court's June 9, 2015, Order and Opinion includes a heading that states: "The FHWA's June 17, 2014, letter was based on incomplete, misleading, and even false information."[3]  While Plaintiff embraces this factually substantiated finding, Plaintiff suspects Defendants take issue with it as one of the many controversies presented by this case.  Absent any controversy as Defendants' contend, Plaintiff would be entitled to judgment today based on *Harman*, but Plaintiff suspects Defendants would disagree given the claims are quite different from those asserted in *Harman*.

---

[1] *Harman*, ECF No. 712 at 2. *See also*, ECF No. 32 (Am. Compl.), ¶50.
[2] *Harman*, ECF No. 712 at 21 (emphasis in original).
[3] *Harman*, ECF No. 712 at 31.

Defendants' efforts to secure an early dismissal here by loosely citing sections of the Complaint and limiting citation to the *Harman* record are unavailing. Plaintiff has stated legitimate claims based on actual documents and the trial testimony of Defendants' employees admitting too much of the underlying fraudulent conduct. The legal challenges raised by Defendants find no actual support in the Complaint or record available on this motion. As such, these motions should be swiftly denied and the parties can move forward to accomplish the schedule set forth by the Court on June 15, 2015.[4]

## FACTS

The facts giving rise to this action were the subject of a jury trial in the *Harman* action to recover monies for the federal government pursuant to the False Claims Act ("FCA"). The jury in *Harman* rendered its verdict on October 20, 2014, concluding that both Defendants here: "knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim."[5] The jury then awarded the federal government $175 million, which was statutorily trebled and mandatory civil penalties imposed to enter Final Judgment against the same Defendants here for $663,360,750.00 in favor of the U.S. government.[6] Pursuant to the FCA, this money is recovered on behalf of the U.S. government, not the states or Plaintiff, who were not parties to the *Harman* action. In addition to the requested declaratory relief, this action seeks to recover monies for those entities harmed by Defendants' conduct, other than the U.S. government.

---

[4] ECF No. 35. Defendants, in the alternative, have also moved for a stay of all litigation based on motions it anticipates filing in *Harman*, and if unsuccessful, the appeal to the Fifth Circuit Defendants anticipate filing. ECF No. 38. The underlying premise to Defendants' request is that they will succeed on appeal where they failed at trial. Plaintiff opposes any stay of these proceedings, as nothing can be done to change the facts from *Harman* that support the claims asserted by Plaintiff here, and the legal challenges raised in *Harman* do not impact the claims here.
[5] *Harman*, ECF No. 570. *See also*, ECF No. 32 (Am. Compl.), ¶¶ 6, 57.
[6] *Id*.; *see also*, *Harman*, ECF No. 713.

This case is about Defendants' ET-Plus guardrail system, and a series of design modifications concealed from the FHWA and state Departments of Transportation ("DOT") that have secretly compromised the safety of the guardrail system on the National Highway System in the United States. The FHWA is an agency within the U.S. DOT responsible for testing the ET-Plus, and if it passes, confirming its eligibility for the states and territories that purchase the ET-Plus.[7] The process is strict and precludes any design modifications or alterations.[8] In 2000, the ET-Plus obtained the requisite approvals from FHWA and state DOTs, including the Wisconsin DOT.[9]

Between 2002 and 2005, Defendants began contemplating cost-saving changes to the design of the ET-Plus. This culminated in a damning email exchange dated November 9, 2004, revealing that the then President of Trinity Highway Products, Steve Brown, embraced a design change in the ET-Plus thinning the extruder head from 5 inches to 4 inches to save Defendants approximately $2 for each piece, or about $250,000 over five years.[10] Importantly, Mr. Brown further stated "I'm feeling we could make this change with no announcement."[11] In fact, Defendants not only concealed design changes in 2005 and forward, they affirmatively misrepresented the design was unchanged from the one approved by FHWA.[12] Defendants' current President, Gregg Mitchell, was forced to admit the falsity of these and similar representations to ET-Plus purchasers during the *Harman* trial.[13]

---

[7] ECF No. 32, ¶¶16-18.
[8] *Id*., ¶¶19-22.
[9] *Id*., ¶¶23-24.
[10] *Id*., ¶36. The email is largely quoted in the Am. Complaint, with citation to the actual document in the *Harman* action, so its content is not restated here.
[11] *Id.*
[12] *Id.*, ¶¶ 44-50; *see also*, *Harman*, ECF No. 712 at 13-15.
[13] *Id.*, ¶50; *see also*, *Harman*, ECF No. 712 at 12-13. This June 9, 2015, Opinion from the Court in *Harman* also provides a summary of the material evidence presented during the trial. This wealth of evidence would be available for any amendment to the complaint, if necessary, undermining any

In January 2012, the FHWA became aware of the possible sale of unapproved ET-Plus guardrail end terminals, and a meeting was scheduled between Defendants and the FHWA Office of Engineering representative, Nicholas Artimovich.[14]   At this February 14, 2012 meeting, Defendants admitted for the first time that they shrank the width of the ET-Plus' feeder channel from 5 inches to 4 inches, but described it as a "detail inadvertently omitted."[15]   This was false, given the failure to disclose other design modification unknown to the FHWA and the November 9, 2004 email clearly orchestrating the plan to proceed with the change "with no announcement."[16] Defendants compounded their affirmative misrepresentations, stating to the FHWA that the secretly changed ET-Plus was tested successfully on May 27, 2005.[17]   And to perpetuate this fiction, Defendants submitted crash test results to the FHWA from this May 27, 2005 testing with the representation that it was the modified ET-Plus being tested, thus misleading FHWA to continue the approval of the ET-Plus on the highways.[18]   This misrepresentation has led the *Harman* court to conclude:

> The Court is now concerned that Trinity may have withheld information at trial regarding the modified ET-Plus and, specifically, the 2005 tests allegedly run on such end terminals, despite extended discovery fights and multiple orders from the Court to produce all such material.[19]

To end Defendants' ongoing misrepresentation of acceptance of the modified ET-Plus and recover for those entities harmed by this conduct, other than the U.S. government which obtained relief through the Final Judgment in *Harman*, Plaintiff asserts the following eight

---

contention that an amendment would be futile where additional facts are perceived by the Court as necessary.

[14] ECF No. 32, ¶82.

[15] *Id.*, ¶¶ 82, 55.

[16] *Id.*, ¶¶ 82-83, 36.

[17] *Id.*, ¶83.

[18] *Id.*, ¶¶83-86.

[19] *Harman*, ECF No. 712 at 40.  This same analysis by the *Harman* Court reveals the underlying weakness and questionable candor in Defendants' hefty reliance on the June 17, 2014, letter as purported "*continuous acceptance*" by the FHWA, which still exists today." Defs.' Br. at 4 (emphasis in original).

causes of action: (1) for declaratory relief under the Declaratory Relief Act, 28 U.S.C. §2201 et. seq.; (2) strict liability for design defects; (3) breach of contract; (4) and (5) for violations of Wisconsin's Deceptive Trade Practices Act, Wis. Stat. §100.18 for misrepresentations and false advertising; (6) and (7) for breaches of express and implied warranties; and alternatively; (8) claims for unjust enrichment.  Depending on the claim, they are asserted on behalf of either a Nationwide or Statewide Class of persons and entities who purchased the ET-Plus guardrail.[20]

## DEFENDANTS' RULE 12(b)(1) MOTION SHOULD BE DENIED

Defendants argue that Plaintiff's claims should be dismissed "pursuant to Federal Rule of Civil Procedure 12(b)(1) because Plaintiff lacks standing to represent its proposed nationwide class."[21]   However, in order to dismiss a complaint for lack of subject matter jurisdiction, a plaintiff must lack Article III standing to pursue its *own* claims, resulting in a lack of a case or controversy.[22]  Defendants do not assert that Plaintiff failed to demonstrate its own standing, but instead limit their subject matter jurisdiction challenge to Plaintiff's ability to represent a nationwide class.  Defendants' subject matter jurisdiction argument incorrectly conflates Article III standing with Rule 23 class certification requirements.[23]

### A.  Plaintiff has Article III Standing to Assert Its Claims.

Article III standing consists of three components: (1) the plaintiff must have suffered an injury in fact; (2) there must be a causal connection between the injury and the challenged conduct of the defendants; and (3) it must be likely that the injury will be redressed by a

---

[20] ECF No. 32, ¶¶87-89.
[21] ECF No. 37 (Defs.' Br.) at 6-8.
[22] *See Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011).
[23] *See Arreola v. Godinez*, 546 F.3d 788, 795 (7th Cir. 2008) ("[T]he inherent problem with the idea of 'standing to bring a class action' is that it 'conflates the standing inquiry with the inquiry under Rule 23 about the suitability of a plaintiff to serve as a class representative.'" (citation omitted)).

favorable court decision.[24]  The Seventh Circuit clarified the scope of these elements and stated: "Plaintiffs have standing if they have been injured, the defendants caused that injury, and the injury can be redressed by a judicial decision . . . .  Nothing more is required for standing . . . . Other deficiencies in a plaintiff's claim concern the merits rather than subject-matter jurisdiction."[25]

As Defendants acknowledge in their argument, Plaintiff has adequately alleged all three elements for standing.[26]  Besides the allegations highlighted by Defendants demonstrating Plaintiff's standing to bring state law claims, Plaintiff made additional allegations supporting its standing to bring claims under federal and state law.[27]  Because Plaintiff adequately alleged standing, and Defendants do not challenge Plaintiff's standing to bring its claims, Defendants' motion to dismiss claims under Rule 12(b)(1) should be denied.

### B.   Rule 23, Not Subject Matter Jurisdiction, Determines Whether Plaintiff is an Adequate Nationwide Class Representative.

Standing is a separate issue from whether a class should be certified, or whether a plaintiff is an adequate class representative.[28]  Once a plaintiff establishes Article III standing to assert its own claim, whether it may also represent a class is determined solely under Rule 23.[29]

---

[24] *See, e.g.*, *Johnson v. Bankers Life & Cas. Co.*, 973 F. Supp. 2d 950, 955 (W.D. Wis. 2013) (citing *O'Sullivan v. City of Chi.*, 396 F.3d 843, 854 (7th Cir. 2005) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992))).

[25] *Morrison*, 649 F.3d at 536 (citations omitted).

[26] *See* Defs.' Br. 7.

[27] *See, e.g.*, ECF No. 32, ¶¶ 1, 4, 9, 17, 24-25, 33, 41-42, 51, 59, 110, 120-121.

[28] *See, e.g.*, *Melendres v. Arpaio*, 784 F.3d 1254, 1261 (9th Cir. 2015) ("*Standing* is meant to ensure that the injury a plaintiff suffers defines the scope of the controversy he or she is entitled to litigate.  *Class certification,* on the other hand, is meant to ensure that named plaintiffs are adequate representatives of the unnamed class.") (citing 1 William B. Rubenstein, Newberg on Class Actions § 2:6 (5th ed.).

[29] *See, e.g.*, *Bzdawka v. Milwaukee Cnty.*, 238 F.R.D. 469, 473-74 (E.D. Wis. 2006) (collecting cases that note that there is a difference between individual standing and whether a plaintiff may represent a class); Newberg on Class Actions § 2:6 ("[A]ny issues regarding the relationship between the class representative and the passive class members . . . are relevant only to class certification, not to standing."); *see also Melendres*, 784 F.3d at 1262 (citations omitted) (collecting cases and stating that this

Since a Rule 23 analysis is not part of this motion to dismiss, determining Plaintiff's adequacy to represent a nationwide class is premature.[30]

This distinction between standing and class certification issues is even supported by the case relied on heavily by Defendants in their 12(b)(1) argument, *Martin v. LG Electronics USA, Inc.*, No. 14-CV-83-JDP, 2015 WL 1486517, at *10 (W.D. Wis. Mar. 31, 2015).[31]  In *Martin*, the court did ultimately determine that the plaintiff was not an adequate class representative for the nationwide classes.  However, the analysis was not done as the result of any defendants' motion to dismiss under 12(b)(1); instead it was analyzed as a result of plaintiff's motion for class certification under Rule 23.

Although the *Martin* Court also noted that within a class certification analysis, determining whether a plaintiff is an adequate class representative may be determined prior to deciding whether the class will be certified, the court did not state that determining the adequacy of a class representative is part of a Rule 12(b)(1) subject matter jurisdiction standing analysis, as urged by the Defendants.[32]  Determining whether Plaintiff is an adequate class representative for the nationwide class is not part of a subject matter jurisdiction analysis; therefore, the Court should deny Defendants' motion to dismiss the nationwide class claims under Rule 12(b)(1).

## LEGAL STANDARD FOR RULE 12(b)(6) MOTION

---

approach has been "embraced several times" by the Supreme Court and has been adopted by "most" other federal courts).

[30] However, contrary to Defendants' arguments, there is no absolute bar preventing a Plaintiff from representing a nationwide class involving members from other states. *See, e.g.*, *In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867, 882-91 (E.D. Pa. 2012) (finding Article III standing and allowing claims from states in which the named plaintiffs did not reside to remain in the case); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 301-02, 333 (3d Cir. 2011) (affirming the certification of a settlement class over objections that there were variations in state laws).

[31] *See* Defs.' Br. 7-8.

[32] *See Martin*, 2015 WL 1486517, at *9 (section entitled "Class Certification").  Although the *Martin* court uses the term "standing" when referring to the determination of the adequacy of the class representative, the Seventh Circuit has stated that using the term in this manner creates confusion, and the term "standing" should be confined to "the Article III inquiry and thus to keep it separate from the plaintiff's entitlement to relief or her ability to satisfy the Rule 23 criteria." *Arreola*, 546 F.3d at 795.

Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing the pleader is entitled to relief.[33]  The pleading standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [acts]."[34]  A well-pleaded complaint "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable . . . . ."[35]  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."[36]

When acting on the pleadings, "courts must indulge the readings and *make the assumptions that favor the plaintiff*."[37]  A court may dismiss a claim pursuant to Rule 12(b)(6) only if a plaintiff cannot prove any set of facts that would entitle relief.[38]  When reviewing a Rule 12(b)(6) motion to dismiss, a court examines the allegations in the complaint to determine if they pass muster.[39]

Further, a plaintiff "must state with particularity the circumstances constituting fraud" so defendants are on notice of the misconduct with which they are accused.[40] Specifically, the plaintiff must state the following: 1) the identity of the person who made the representation; 2) the time, place and content of the misrepresentation; and 3) the method by which the misrepresentation was communicated to the plaintiff.[41]  This essentially "means the who, what, when, where, and how" of the circumstances constituting fraud, so as to ensure a potential

---

[33] Fed. R. Civ. P. 8(a)(2).

[34] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

[35] *Id.*

[36] *Ashcroft v. Iqbal*, 56 U.S. 662, 679 (2009).

[37] *Xechem v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 902 (7th Cir. 2004) (emphasis added).

[38] *See Marshall-Mosby v. Corp. Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000); *Travel All Over the World v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1429 (7th Cir. 1996).

[39] *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997).

[40] Fed. R. Civ. P. 9(b); *see also Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 468 (7th Cir. 1999); *Camasta v. Jos. A. Bank Clothiers*, 761 F.3d 732, 737 (7th Cir. 2014).

[41] *Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771 777 (7th Cir. 1994); *Uni*Quality, Inc. v. Infotronix, Inc.*, 974 F.2d 918, 923-24 (7th Cir. 1992); *see also Siegel v. Shell Oil Co.*, 480 F.Supp.2d 1034, 1039 (N.D. Ill. 2007).

plaintiff does not bring forth a frivolous or broad claim since such claims may permanently damage a business and/or its reputation.[42]  Rule 9(b) is satisfied here.

## DEFENDANTS' RULE 12(b)(6) MOTION SHOULD BE DENIED

**A.    Defendants' Rule 9(b) Arguments to Dismiss Counts Four through Eight are Without Merit.**

Defendants' request for dismissal pursuant to Rule 9(b) is specious at best.  In seeking dismissal, Defendants argue to this Court that insufficient factual detail exists in the Complaint to provide notice of the fraud alleged.  Despite a jury verdict and Final Judgment against Defendants in *Harman* based on the facts as stated in the Complaint, Defendants seek to invoke Rule 9(b) here to "assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate."[43]  They assert  to this Court that they are not informed of their "alleged participation in the fraud" while paraphrasing selections from the Complaint, without considering the specific factual allegations tied to documents and testimony that led to a jury verdict and Final Judgment against Defendants in the *Harman* action.   In *Harman*, Gregg Mitchell, the president of Trinity Highway Products, speaking for Defendants, admitted the false representation to the FHWA that the ET-Plus was not modified for the 2005 testing  Defendants sought to conceal and continually misrepresent as approved by FHWA.[44]  Defendants' Rule 9(b) arguments lack credibility and should be swiftly rejected.

---

[42] *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990); *see also Uni*Quality*, 974 F.2d at 924 ("Accusations of fraud can seriously harm a business."); *Ackerman*, 172 F.3d at 469 ("By requiring plaintiffs to allege the who, what, where, and when of the alleged fraud, the rule requires the plaintiff to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate.").

[43] Def. Br. at 19 citing *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999).

[44] *Harman*, ECF No. 712 at 12 citing ECF No. 580 at 48:12-25. *See also*, ECF No. 32 at ¶¶36-53 (citing documents and testimony from *Harman*).

The relevance and import of the evidence from the *Harman* action is undeniable.[45]   In seeking a stay, Defendants further argue   "the allegations in the Amended Complaint are patterned after those raised in an action previously filed against Trinity under the federal False Claims Act ("FCA") by *qui tam* relator Joshua Harman" and noting  "the Complaint alleges facts substantially similar to those set forth in the Amended FCA Complaint."[46]   And yet that was a case that  proceeded to trial and  the jury returned a verdict against Defendants, finding both Defendants "knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim."[47]   The Amended Complaint identifies the actual testimony and documents underpinning the alleged fraud.[48]   Much of this same "substantial" evidence of fraud was likewise summarized by Judge Gilstrap on June 9, 2015, who denied Defendants' Renewed Rule 50(b) Motion for Judgment as a Matter of Law, raising some skepticism as to the arguments and candor of Defendants pre- and post-trial conduct in the FCA Action.[49] Thus, Defendants' efforts to dismiss Counts Four-Eight should be denied.[50]

### B.     Plaintiff Has Stated Claims in Counts Four and Five Under The Wisconsin Deceptive Trade Practices Act.

Defendants initially seek dismissal of Plaintiff's claims under the Wisconsin Deceptive Trade Practices Act, Wis. Stat. §100.18 under Rule 9(b).[51]   This argument outright ignores the

---

[45] Defendants recognize the import of the evidence from Harman as they produced a selection of the trial exhibits from *Harman* with their Initial Disclosures as supporting their claims and defenses.  The recognition that this evidence may support its defenses pursuant to Rule 26(a) further belies their Rule 9(b) argument that they are without adequate notice of the fraud claims along with the conduct giving rise to the allegations in the Complaint.

[46] ECF No. 39 at 1, 3.

[47] *Harman*, ECF No. 570.

[48] *See e.g.* ECF No. 31, n. 7-20.

[49] *Harman*, ECF No. 712.

[50] And even if Defendants' Rule 9(b) arguments did have merit, which they do not, Plaintiff should be afforded an opportunity to amend since it is not futile given the overwhelming evidence of fraud that now exists in the public record through the *Harman* action and corresponding governmental inquiries and investigations.

[51] Defs.' Br. at 16-19.

near entirety of the Complaint and the material cited therein.  As set forth above, Defendants'
Rule 9(b) arguments are unavailing, so Plaintiff will address the other challenges to their Section
100.18 claims that should likewise be rejected.

### 1.  Plaintiff is a member of the "public" for purposes of Section 100.18.

Contrary to Defendants' argument, whether Plaintiff is a member of the "public" under
Section 100.18 is a question of fact.[52]  Section 100.18 is designed to protect the public from
untrue, deceptive, or misleading statements made in sales promotions.[53]  Although Section
100.18 does not set forth any bright-line definition, Wisconsin courts have interpreted when a
party is considered a member of the public.[54]  Generally, "a plaintiff remains a member of 'the
public' unless a particular relationship exists between him or her and the defendant."[55]  Whether
a particular relationship exists depends on the facts and circumstances of the case and "must be
tested by the statute in light of such facts and circumstances."[56]

In *K & S Tool & Die Corp*., the court noted that, even though a reasonable jury could find
a particular relationship existed where the plaintiff had purchased goods from the defendant in
the past and had an agreement for the defendant to find the plaintiff a particular good, a
reasonable jury could also have found that the plaintiff was a member of the public at the time
the false representation was made.[57]  Indeed, the court there determined "given the nature of [the

---

[52] *K & S Tool & Die Corp. v. Perfection Machinery Sales, Inc.*, 732 N.W.2d 792, 801-02 (Wis. 2007)
(concluding whether plaintiff was member of "the public" presented question of fact); *see also Hackel v.
Nat'l Feeds, Inc.*, 986 F. Supp. 2d 963, 980 (W.D. Wis. 2013) (holding genuine issue of material fact
existed as to whether plaintiff was member of "the public" for purposes of Section 100.18).
[53] *State v. Automatic Merchs. of Am., Inc.*, 221 N.W.2d 683, 686-87 (Wis. 1974).
[54] *K & S Tool & Die Corp.*, 732 N.W.2d at 799; *see also Automatic Merchs. of Am., Inc.*, 221 N.W.2d at
686-87 (Wis. 1974) (holding statute does not require deceptive or misleading representation in connection
with sale of a product be made to large audience; one person may suffice as "public" for purposes of
statute).
[55] *K & S Tool & Die Corp.*, 732 N.W.2d at 800; *see also Bates v. Wis. Dep't of Workforce Dev.*, 636
F.Supp.2d 797, 811 (W.D. Wis. 2009).
[56] *Cawker v. Meyer*, 133 .W. 157, 159 (Wis. 1911); *see also K&S Tool & Die Corp.*, 732 N.W.2d at 800.
[57] 732 N.W.2d at 801.

defendant's] business as an industry leader, the jury could reasonably infer that [the plaintiff] contacting [the defendant] . . . would not be a sufficient fact to create a particular relationship." [58]

Here, Defendants' argument fails because a reasonable fact-finder could determine Defendants' false misrepresentations induced Plaintiff into purchasing the ET-Plus units.[59] Plaintiff has alleged multiple times throughout the Complaint that, had Defendants not made false misrepresentations regarding their products' safety and FHWA compliance to the State of Wisconsin or Wisconsin Department of Transportation, Plaintiff would not have purchased the ET-Plus units and therefore would not have purchased any of Defendants' defective products.[60] The purpose of Section 100.18 "is reflected in the alternative requirement that the assertion, representation, or statement of fact be either with intent to sell or *with intent to induce the public to enter into a contract or obligation relating to a purchase or sale.*"[61]  Defendants' conduct is the kind which Section 100.18 was ultimately designed to prohibit: Defendants falsely certified the ET-Plus units were safe and complied with FHWA standards, which is why Plaintiff even chose to purchase such units in the first place.

### 2.  Defendants affirmatively misrepresented their products.

Defendants' argument fails because Defendants affirmatively represented to the federal government, the State of Wisconsin and Plaintiff that they had properly followed the regulatory approval process.[62]   Section 100.18 prohibits affirmative assertions, representations, or statements of fact that are false, deceptive, or misleading.[63]  Indeed, Plaintiff has alleged multiple

---

[58] *Id.*
[59] *See Kailin v. Armstrong*, 643 N.W.2d 132, 149 (Wis. Ct. App. 2002) ("The purpose of § 100.18 is aimed at untrue, deceptive or misleading statements made *to induce certain actions.*") (emphasis added).
[60] ECF No. 32, ¶¶ 9, 25, 75.
[61] *Kailin*, 643 N.W.2d at 149 (emphasis added).
[62] ECF No. 32, ¶¶ 3, 4, 16-25, 32, 34, 35, 45, 46, 48-49.
[63] Wis. Stat. Ann. § 100.18; *see also Tietsworth v. Harley-Davison, Inc.*, 677 N.W.2d 233, 245 (Wis. 2004).

times that Defendants falsely certified their products to be approved by the FHWA and in compliance with such standards.[64]   Defendants are required to certify to purchasers that their products "[have] essentially the same chemistry, mechanical properties, and geometry as that submitted for acceptance."[65]   Defendants are federally required, by law, to submit any changes in the ET-Plus units for approval to the FHWA.[66]   Defendants did not submit to the FHWA any changes to the ET-Plus units for approval and have been continuously misrepresenting their dangerous and illegal products from 2005 through to the present day.[67]

### 3.  Plaintiff may properly bring this claim under Section 100.18.

Plaintiff is the proper party to bring this action. The inquiry under Section 100.18 is whether the representation "materially induced the plaintiff's decision to act and whether the plaintiff would have acted in the absence of the representation."[68]   This is plainly the case here, as absent Defendants' fraudulent conduct, there is no federal or state approval for the ET-Plus system and no purchase from Plaintiff.[69]

The cases to which Defendants cite involve parties that are competitors, and it is well-conceded that Section 100.18 "is not designed to protect product manufacturers from the deceptive acts of their competitors."[70]   However, these cases are easily distinguishable from the instant matter. Plaintiff is not merely a non-party or the wrong "entity to complain about [Defendants'] alleged deception."[71]   Plaintiff is not a fellow manufacturer looking to expose its competition; Plaintiff is a consumer that Defendants' false representations materially induced to

---

[64] ECF No. 32, ¶¶ 4, 23-24, 50, 55, 73, 76, 81.
[65] *Id.*, ¶ 81.
[66] *Id.*, ¶¶ 16-25.
[67] *Id.*, ¶ 86.
[68] *Grice Eng'g, Inc. v. JG Innovations, Inc.*, 691 F. Supp. 2d 915, 923 (W.D. Wis. 2010) (quoting *Novell v. Miglaccio*, 749 N.W.2d 544, 553-54 (Wis. 2008)).
[69] ECF No. 32 at ¶¶ 9, 24-25.
[70] *Riddell, Inc.v. Schutt Sports, Inc.*, 724 F.  Supp. 2d 963, 980 (W.D. Wis. 2010).
[71] *Riddell*, 724 F. Supp. 2d at 981.

purchase the defective ET-Plus units. Plaintiff is the kind of party which the legislature intended to protect from "any untrue, deceptive or misleading representations made to promote the sale of a product."[72]   Therefore, Defendants' argument here is meritless and Plaintiff may properly proceed with this claim.

### 4. Plaintiff's Section 100.18 Claim is Based on Defendants' Conduct Occurring After February 25, 2012.

Plaintiff's Section 100.18 claims before February 25, 2012 are not time-barred by the three year statute of repose set forth in Section 100.18(11)(b)(3).   Plaintiff made purchases within the last three years, in 2012 and 2014.[73]   Contrary to Defendants' assertions, after confidentially admitting to FHWA only that the modification to the feeder channel misrepresenting it as a "detail inadvertently omitted," Defendants submitted to the FHWA the test results purportedly corresponding to the May 27, 2005 testing of the subject ET-Plus to falsely maintain continued approval by FHWA of the use of the ET-Plus on the nation's roadways.[74]   Of course, internally at Defendants, it was part of an orchestrated fraudulent plan, not an inadvertent omission, to save $2 per ET unit sold."[75]   And approval was never sought nor obtained by Defendants for this modified system, yet Defendants maintained the ET-Plus enjoyed "*continuous acceptance* by the FHWA".[76]   These false statements by Defendants to secure FHWA approval continued into 2014, where on October 21, 2014, Defendants were directed to produce this data and videos from 2005 and 2010 testing, and perform additional testing on the ET-Plus.[77]   Defendants' conduct arising from their response to this October 21,

---

[72] *K & S Tool & Die Corp. v. Perfection Machinery Sales, Inc.*, 720 N.W.2d 507, 513 (Wis. Ct. App. 2006) (quoting *State v. Automatic Merchs. of Am., Inc.*, 221 N.W.2d 683, 686 (Wis. 1974)).
[73] ECF No. 32 at ¶9.
[74] ECF No. 32 at ¶¶ 55, 82-83.
[75] *Id.* at ¶36.
[76] Defs. Br. at 4.
[77] ECF No. 32 at ¶66.

2014, letter from FHWA and inconsistent positions taken during the trial in *Harman* has led that Court to now be "concerned that Trinity may have withheld information at trial regarding the modified ET-Plus and, specifically, the 2005 tests allegedly run on such terminals, despite extended discovery fights and multiple orders from the Court to produce all such material."[78]

### C.   Plaintiff's Breach Of Contract Claim May Proceed.

Plaintiff's breach of contract claim (Count Three) may proceed because Plaintiff alleged revocation of acceptance to the ET-Plus purchased in its Complaint.  Acceptance of goods precludes effective rejection under the Uniform Commercial Code ("U.C.C.").[79]  The U.C.C. permits buyers to revoke acceptance under certain circumstances.[80]   Under the Wisconsin U.C.C., a buyer wishing to revoke must show that the goods failed to conform to the contract and that nonconformity substantially impaired their value.[81]   A buyer may not revoke acceptance *if acceptance is made with knowledge of a nonconformity*.[82]   However, a buyer may revoke nonconforming accepted goods without discovery of such nonconformity if the acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.[83] A buyer must revoke acceptance within a reasonable time after the buyer discovers or should have discovered grounds for revocation.[84]   Although notification to the seller of revocation of acceptance is generally required, courts have held that direct notice is not required

---

[78] *Harman*, ECF No. 712 at 38-40.
[79] Wis. Stat. Ann. § 402.607(2).
[80] *See* Wis. Stat. Ann. § 206.608.
[81] *H.B. Fuller Co. v. Kinetic Systems, Inc.*, 932 F.2d 681, 687 (7th Cir. 1991).
[82] Wis. Stat. Ann. §402.607(2) (emphasis added).
[83] Wis. Stat. Ann. § 402.6080(1)(b).
[84] Wis. Stat. Ann. § 402.608(2).

"where the seller actually knows about the defect of a particular product, or the seller is reasonably notified by the filing of the buyer's complaint."[85]

Plaintiff has alleged revocation in its Complaint by stating that it has stopped installing the ET-Plus units, along with its intention to remove and replace all ET-PLUS end terminal systems on its roadways as soon as it has the necessary funds.[86]  Plaintiff has also alleged its reliance on Defendants' false certifications as to the safety and conformity of the products to FHWA standards, and thus had no knowledge of nonconformity.[87]   A fact-finder could determine Plaintiff revoked its acceptance within a reasonable time, as Defendants have repeatedly falsely certified their products' safety and compliance with FWHA standards since 2005 up through the present.[88]  Moreover, unbeknownst to Plaintiff, Defendants have been on constructive notice as to the defect in their products since at least 2005, after they secretly modified the ET-Plus units and ran failed tests.[89]  Because Plaintiff has alleged revocation in its Complaint, Plaintiff's breach of contract claim should proceed; and in the alternative, Plaintiff respectfully requests leave to amend.

### D.    Plaintiff Has Properly Alleged a Claim for Declaratory Relief.

Defendants present two arguments for dismissal of Plaintiff's claim under the Declaratory Judgment Act, 28 U.S.C. §2201, *et seq*. ("DJA") (Count One), namely that there is

---

[85] *See id.*, *see also Muehlbaurer v. Gen. Motors Corp.*, 431 F.Supp.2d 847, 858 (N.D. Ill. 2006) (citing *Connick v. Suzuki Motor Co.*, Ltd., 675 N.E.2d 584, 589-90 (Ill. 1996).
[86] ECF No. 32, ¶¶ 7, 72.
[87] *Id.*, ¶¶ 73, 74, 75, 77, 81.
[88] *Id.*, ¶¶ 74, 75, 82, 83, 84, 85, 86; *see also Viking Packages Technologies Inc. v. Vasallo Foods, Inc.*, 804 N.W.2d 507, 516 (Wis. Ct. App. 2011) ("Ordinarily, what constitutes a reasonable time is a question of fact for the factfinder."); *Stridiron v. I.C.*, 578 F. Supp. 997, 1001 (D.V.I. 1984) (finding revocation of acceptance timely where seller made repeated assurances to buyer that defects would be cured); *Mercedes-Benz of North America, Inc. v. Norman Gershman's Things to Wear*, 596 A.2d 1358, 1364 (Del. 1991) (holding plaintiff's revocation was timely and reasonable where seller continuously asserted misrepresentations and assurances for months).
[89] ECF No. 32, ¶ 52.

no actual controversy, and that the claim is duplicative of Plaintiff's other claims.  Defendants are wrong on both accounts.

*First*, the DJA requires an actual controversy for legal determination.  When determining whether an actual controversy exists under the DJA, the question is whether there is a real dispute between parties with adverse legal interests "of sufficient immediacy and reality to warrant issuance of a declaratory judgment" and to ensure  such a judgment is not merely an advisory opinion.[90]  In other words, a party bringing a declaratory-judgment action must allege a direct injury or threat of injury that is "real and immediate, not conjectural or hypothetical."[91]

Here, in Paragraph 107 of the Complaint, Plaintiff specifically pled the "actual controversy between Trinity and Plaintiff":

> (1) whether Trinity's ET-Plus end terminals have a defective design that cause the guardrails to throat lock during impact; (2) whether Trinity knew, or should have known, of this defective design; (3) whether Trinity concealed this information from the FHWA, state and local departments of transportation, and other customers; [4] whether Trinity knew or should have known that the modified ET-Plus end terminals were not properly tested pursuant to government regulations; and (5) whether Trinity tried to cover up the ET-Plus defects without notice to Plaintiff and the Declaratory Relief Class about the defects, and the potential for the ET-Plus end terminals to fail as a result of the defects.[92]

This controversy about the facts relating to the defective design of the guardrails is "real and immediate" and  not hypothetical.  Defendants' "no controversy" argument is also belied by their own arguments seeking to dispel their knowledge of the fraud despite concealing material design changes from FHWA, state and local departments of transportation, as was alleged in detail in the Amended Complaint.[93]  Accordingly, Plaintiff has properly pled an actual controversy.

---

[90] *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, (2007) (citing *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 85 L. Ed. 826 (1941)).

[91] *Atl. Int'l Ins. Co. v. Atchison, Topeka, and Santa Fe Ry.*, 938 F.2d 81, 83 (7th Cir. 1991) (internal citations omitted).

[92] ECF No. 32 at ¶107.

[93] *See* ECF No. 37 at 12-13 (Br. at 5-6); ECF No. 32 at ¶¶73-86.

To put an end to that controversy, Plaintiff seeks a declaration stating that the ET-Plus end terminals "are defective in their design, material, labeling, and warranties" (ECF No. 32 at ¶110) and that "Defendants should be declared responsible for notifying all Class Members of the defects and ensuring that all guardrail systems with the ET-Plus end terminal defect are promptly recalled and repaired."[94]  These declarations would resolve the controversy by settling the liability issue on a nationwide basis, and would inform the Nationwide Class members as to the availability of the warranty coverage.[95]   Accordingly, Defendants' "no controversy" argument fails.

*Second*, Defendants' argument that the DJA claim should be dismissed because it duplicative of other claims also fails.  The mere availability of other remedies does not warrant the dismissal of a DJA claim.  Indeed, other district courts have refused to dismiss DJA claims at the pleading stage in class actions that also brought breach of warranty and claims under consumer protection statutes.  For example, in a latent defect class action involving leaky wood windows, the court in *Saltzman v. Pella Corp.*, 06-cv-4481, 2007 U.S. Dist. LEXIS 19650, at *17 (N.D. Ill. March 20, 2007) refused to dismiss the DJA claim under Rule 12(b) standards finding it "premature to make that determination here."  In this case, Plaintiff alleges many of the same claims at issue in *Saltzman*, including violations of a consumer protection statute; breach of

---

[94] *Id.* at ¶92(s), p. 40 at C.  Plaintiff also seeks a declaration that Defendants must disgorge ill-gotten profits from the sale of the defective guardrails.  ECF No. 32 at 40 at F.

[95] *See id.* at ¶92(o) (setting forth common and predominating issues of law and fact including "Whether Plaintiff and the Classes are entitled to a declaratory judgment stating that the ET-Plus end terminals are defective ***and/or not merchantable***.") (emphasis added); *id.* at ¶158 ("The ET-Plus end terminals were unmerchantable when they left Defendants' possession because they had the propensity to malfunction, and fail to perform and protect vehicle occupants when put to their intended and ordinary use."); ¶164 (the ET-Plus end terminals "pose a danger to vehicle occupants during a crash"); ¶92(s); *see also Pella Corp. v. Saltzman*, 606 F.3d 391, 395 (7th Cir. 2010) (in a class action involving defective windows, the Court affirmed certification of a Rule 23(b)(2) class in which "[members of the (b)(2) class] would want declarations that there is an inherent design flaw, that the warranty extends to them and specific performance of the warranty to replace the windows when they manifest the defect, or final equitable relief.").

implied warranty; unjust enrichment; and declaratory relief under the DJA.[96]  And, in *Saltzman*, all of those claims survived a Rule 12(b)(6) motion to dismiss.[97]  In *Saltzman*, there was no concern of duplicative claims or remedies at the pleading stage.  Likewise, there should be no concern here and this Court should adopt the analysis performed by the district court in *Saltzman*.

Ultimately, the *Saltzman* court certified a nationwide Rule 23(b)(2) class of consumers who either have not manifested the alleged defect in their windows, or whose windows have some wood rot but have not yet been replaced.[98]  The *Saltzman* court also certified a group of six state classes under Rule 23(b)(3) of consumers whose windows have already been replaced.  *Id.*  These class certifications were upheld by the Seventh Circuit on interlocutory appeal.[99]  The Seventh Circuit also approved the proposed declarations there – which are similar to those in this case – that (1) there is an inherent design flaw; and (2) that the warranty extends to the 23(b)(2) class members who had not replaced their windows but who might in the future because of the purported design flaw.[100]

Here, the declarations sought are not duplicative of any other cause of action; they work together to both achieve monetary and declaratory relief.  If ultimately granted, these declarations will conclusively establish that a defect exists and will notify all members of the Nationwide Class of the "latent defects" so that they may obtain the appropriate relief.[101]  Such relief is necessary to prevent the accrual of future damages and is in addition to the monetary

---

[96] *See id.* at *2.
[97] The breach of implied warranty claim in *Pella* survived for plaintiffs from New Jersey because the statute of limitations had not yet expired; however, the court dismissed this claim for the other plaintiffs because the statute had run.  *Saltzman*, 2007 U.S. Dist. LEXIS 19650, at *15-16.
[98] *Saltzman v. Pella*, 257 F.R.D. 471, 487 (N.D. Ill. 2009).
[99] *See Pella Corp. v. Saltzman*, 606 F.3d 391, 395-96 (7th Cir. 2010).
[100] 606 F.3d at 395.
[101] ECF No. 32, ¶150; *see also Pella,* 606 F.3d at 395 (approving the availability of declaratory relief in consumer class action to notify consumers of latent defect).

relief sought by the other claims.[102]   Therefore, this Court should reject Defendants' DJA arguments and allow the claim to proceed at this early stage, as numerous other courts have done.[103]

While Defendants cite to *Quad/Med Claims, LLC v. Liberty Mut. Ins. Co.*, 2013 U.S. Dist. LEXIS 136580, at *15 n.5 (E.D. Wis. Sept. 24, 2013) (citing *Illinois v. City of Chi.*, 137 F.3d 474, 476-77 (7th Cir. 1998)) for the proposition that the DJA is not a claim itself but rather a remedy, *Quad/Med* is distinguishable as Quad did not allege "any *actual* claims against Liberty in either of its amended complaints," but rather simply asserted the DJA as its sole basis for relief.[104]   This is not the case here.   Contrary to Defendants' overstated claim that courts "routinely"[105] decline to hear declaratory judgment actions that are duplicative of other substantive claims, courts have, in reality, repeatedly refused to prevent similar injunctive relief sought at the pleading stage.[106]   Moreover, the *Saltzman* decisions, discussed above, make it

---

[102] *See Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991) (holding that plaintiff can maintain an independent declaratory judgment action where he or she "can demonstrate a good chance of being likewise injured in the future"); *Shephard v. U.S. Olympic Comm.*, 94 F. Supp. 2d 1136, 1149 (D. Colo. 2000) ("The purpose of the [DJA] was to prevent the accrual of avoidable damages").

[103] *See In re Hardieplank Fiber Cement Siding Litig.*, No. 12-MD-2359, 2013 WL 3717743, at *18 (D. Minn. July 15, 2013) (where the defendant argued that the DJA claims were duplicative, the court held that the motion to dismiss the DJA claim was premature, and that "Plaintiffs are permitted to plead in the alternative."); *Fleisher v. Fiber Composites*, LLC, 12-cv-1326, 2012 WL 5381381, at *13 (E.D. Pa. Nov. 2, 2012) ("it is premature to dismiss Plaintiffs' DJA claim at this point."); *Irshad Learning Ctr. v. Cnty. of DuPage*, 804 F. Supp. 2d 697, 719 (N.D. Ill. 2011) ("The court concludes that Defendants' motion to dismiss the claim for injunctive relief is premature."); *Cmty. Programs of Westchester of Jewish Cmty. Servs. v. City of Mt. Vernon*, 06-cv-33432, 2007 2981915, at *6 n.5 (S.D.N.Y. Oct. 9, 2007) (same); *Saltzman v. Pella Corp.*, 06-cv-4481, 2007 U.S. Dist. LEXIS 19650, at *17 (N.D. Ill. March 20, 2007) (refusing to dismiss Declaratory Judgment Act claim).

[104] *See Quad/Med Claims, LLC*, 2013 U.S. Dist. LEXIS 136580, at *12 (emphasis in original).

[105] Defendants cite only two unpublished cases for this sweeping proposition. ECF No. 37 at 19 (Br. at 12).

[106] *See Lawn v. Enhanced Serv. Billing, Inc.*, 10-cv-1196, 2010 WL 2773377, at *6 (E.D. Pa. July 13, 2010) ("This Court will address the issue of remedies, including the possibility of injunctive relief, if there is a finding of liability.  We see no need to limit the potential remedies available to Plaintiff at this time, however, and will not dismiss Plaintiff's claim for injunctive relief."); *Lewis v. Bank of Am. NA*, 13-cv-7717, 2013 WL 7118066, at *14 (C.D. Cal. Dec. 18, 2013) ("At this juncture, it would be premature to find that injunctive relief may not be granted."); *In re Auto. Parts Antitrust Litig.,* 12-MD-02311, 2013

clear that the declaratory relief relating to design defect and breach of warranty claims is both legally sufficient at the pleading stage and certifiable at the class certification phase. Thus, Plaintiff has properly pled its DJA claim here.

### E.   Plaintiff has Properly Pled Damages.

Defendants' damage arguments are in conflict. Defendants argue Plaintiff has not pled damages, while concurrently arguing for the application of the economic loss doctrine to the damages Plaintiff has pled.[107]  The Complaint clearly pleads damages as Plaintiff has fourteen ET-Plus end terminals installed on its roadways it purchased in 2011, 2012 and 2014 for between $1,540 and $2,000 each, and will need to be replaced by Plaintiff at a cost of $42,255.96.[108]  It is indisputable that "[s]tates and territories [like Plaintiff] install and maintain their highway systems, including hardware."[109]  These allegations alone are sufficient to state a claim for damages under Counts Three through Eight of the Complaint pursuant to Rule 8, and Defendants' efforts to change the law on damages and pleading standards in their motion is unavailing.

### 1.   Defendants Manifestation of Defect Arguments Distort Law

While it is true that none of the growing list of fatal accidents attributable to the ET-Plus have occurred within Plaintiff's borders, Plaintiff is not inclined to wait for this to occur and it is of no import to the claims asserted in the Complaint. None of Plaintiff's purchases would have, or could have, occurred absent the admitted misrepresentation made by Defendants in 2005 to the FHWA and their efforts for nearly a decade to cover it up. For instance, once the truth was

---

WL 2456584, at *14 (E.D. Mich. June 6, 2013) ("This Court is not in a position, at this stage of the proceedings, to render an assessment that injunctive relief cannot be had.").

[107] *Compare* Defs.' Br. at 26-29 (arguing no damage is pled) *with* 13-15 (acknowledging "Plaintiff reduces those damages to quantifiable amounts").

[108] ECF No. 32 ¶¶ 9, 72.

[109] *See* http://www.fhwa.dot.gov/guardrailsafety/faq.cfm (last visited July 8, 2015).

known that the ET-Plus being sold was different than the one that complied with NCHRP 350 testing, there were 42 states as of December 12, 2014, that confirmed removal of the ET-Plus from their approved purchase list.[110]  Whether the ET-Plus is ultimately involved in an accident, fails and maims or kills someone, is not a requirement for damages under Plaintiff's claims.

Defendants premise their argument on a class certification decision from the Seventh Circuit, *In re Bridgestone/Firestone, Inc*., 288 F.3d 1012 (7th Cir. 2002), where class was denied in a tire defect action as unmanageable given numerous different designs of allegedly defective tires and varying recalls.[111]  Defendants are free to raise these issues at class certification, but they are not germane to the Rule 12(b)(6) motion now before this Court.  Defendants misstate the law from the Eighth Circuit upon which they rely as requiring manifestation of defect. To the contrary, all that needs to be pled is the product purchased by Plaintiff contains the alleged defect, as it does here.   In contractual terms, the Complaint makes clear that the product purchased from Defendants required the requisite approvals from FHWA to be purchased by Plaintiff, and they admittedly did not as the approval was for a different design of the ET-Plus.[112] There is simply no basis to dismiss the Complaint on a failure to plead damages.

### 2.    The Economic Loss Doctrine Does Not Bar Count Two

As an initial matter, the economic loss doctrine applies only to the claims asserted in Count Two and no other claim is impacted by Defendants' economic loss arguments.  If this claim were to be dismissed pursuant to the economic loss doctrine as Defendants request, Plaintiff's Declaratory Judgment Claim pled in Count One is not "wholly duplicative" of the

---

[110] ECF No. 32, ¶59.

[111] The Seventh Circuit distinguished cases at class certification like *In re Bridgestone/Firestone, Inc.*, not the pleading stage. *See Pella Corp. v. Saltzman*, 606 F.3d at 393.  This case is far more akin to the recent decision in *Pella Corp.* for class certification purposes.

[112] These facts are plainly distinguishable from the allegations in *Jasper v. Abbott Labs., Inc*., 834 F. Supp. 2d 766 (N.D. Ill. 2011) relied upon by Defendants to manufacture their manifestation of damage argument.

strict liability claim, so its dismissal on that ground would be inappropriate.[113]   In short, Defendants cannot have it both ways; so to the extent the strict liability claim were to be dismissed, no dismissal of the DJA claim can be premised on the argument it is cumulative or duplicative of the strict liability claim as Defendants contend.

Nonetheless, Defendants' economic loss arguments should fail here.  While the economic loss doctrine in Wisconsin is applied broadly, it applies only to purely "economic loss."[114]   There is no single generally accepted definition for economic loss under Wisconsin law, but the Wisconsin Supreme Court has described it as a loss caused by "a product failing in its intended use . . . or failing to live up to a contracting party's expectations."[115]   Here, the damages are not caused by the product's failure, but rather, the product is not the one that was purchased as having withstood the rigorous testing overseen by the FHWA for approval to be used on the country's roadways.   As such, damages sought by Plaintiff in Count Two include: "The safety and feasibility of these guardrails must now be studied, inspected, tested, and potentially each unit must be replaced."[116]   This is squarely within the analysis set forth in *Triad Group*, where the loss was not economic loss under Wisconsin law because the actual completed product was never provided requiring the party to start anew to secure the contracted for goods.[117] Admittedly contrary to the representations made by Defendants for nearly a decade, the product sold to Plaintiff was not the product approved by the FHWA in 2005.  While Plaintiff's loss

---

[113] The claims are not "wholly duplicative" as Defendants suggest.  The declarations sought under the Declaratory Judgment Act will apply nationally and are far more expansive than those relating to the strict liability claims. *See* ECF No. 32, ¶ 107.  Such declarations are widely accepted in the Seventh Circuit, especially as they relate to breach of contract and warranty claims, and susceptible to class treatment. *See Saltzman v. Pella Corp.*, 257 F.R.D. 471 (N.D. Ill. 2009) aff'd *Pella Corp. v. Saltzman*, 606 F.3d 391 (7th Cir. Ill. 2010).

[114] *See Triad Group, Inc. v. Vi-Jon, Inc.*, 870 F. Supp. 2d 645, 650 (E.D. Wis. 2012).

[115] *See id.*, (quoting *Kaloti Enterprises, Inc. v. Kellogg Sales Co.*, 283 Wis. 2d 555, 580 (2005)).

[116] ECF No. 32, ¶121.

[117] *Id.*

certainly has economic components, it is not purely economic loss as defined by Wisconsin law, and the economic loss doctrine is therefore inapplicable.

### F.    Plaintiff's Claims are Timely.

Defendants' argument as to the statutes of limitations fails for various reasons. First, Defendants' statute of limitations defense is improper in the context of a Rule 12(b)(6) motion to dismiss. The statute of limitations is an affirmative defense and "the existence of a defense does not undercut the adequacy of [a] claim."[118] Only when a plaintiff pleads facts that show its suit is barred by the statute of limitations may it plead itself out of court under a Rule 12(b)(6) analysis.[119]

Second, Plaintiff's claims are not time-barred because Defendants' unlawful acts occurred within all of the relevant time periods so as to comply with the various statutes of limitations. As Defendants cited in their brief, Wisconsin's limitations period for 1) breach of contract and breach of warranty claims is six (6) years, Wis. Stat. Ann. §§ 402.724 and 893.43; 2) consumer fraud is three (3) years, Wis. Stat. Ann. § 100.18(11)(b)(3) and 3) unjust enrichment is six (6) years, *see Boldt v. State*, 305 N.W.2d 133, 141 (Wis. 1981).[120] Defendants' unlawful acts, specifically, breach of contract and/or warranty, consumer fraud, and alternatively unjust enrichment, occurred in 2011, 2013, and 2014, upon the selling of their defective ET-Plus end systems and false certifications as to the safety and compliance with FHCA standards to Plaintiff.[121] Moreover, Defendants assume that the alleged class period, which has yet to be determined because potential Class Members have yet to be determined, falls outside of the

---

[118] *Deckard v. General Motors Corp.*, 307 F.3d 556, 560 (7th Cir. 2002) (noting motion to dismiss was improper when affirmative defense was raised).
[119] *Whirlpool Financial Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995).
[120] *See* Defs.' Br. 24-25.
[121] ECF No. 32, ¶¶ 7, 9, 74, 75, 81.

statutory periods.[122]   This argument is premature in the context of a Rule 12(b)(6) motion to dismiss and before class certification.

### G.   Plaintiff May State a Claim for Unjust Enrichment in the Alternative.

Plaintiff has properly stated a claim for unjust enrichment (Count Eight) in the alternative.   Both the federal rules and Wisconsin law allow for parties to plead alternative theories of liability.[123]  Indeed, Section 802.02 5(b) provides:

> A party may set forth two (2) or more statements of a claim or defense alternatively or hypothetically, either in one claim or defense or in separate claims or defenses. When two (2) or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or    more of the alternative statements. A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal or    equitable grounds.[124]

A party cannot state a claim for unjust enrichment in the same pleading as breach of contract only where it fails to specifically state on the face of the pleading such a claim is made "in the alternative."[125]   Because Defendants' benefit from such conduct would amount to unjust enrichment if no valid contract is found to have existed between the parties, then Plaintiff's claim for unjust enrichment has been properly pled in the alternative.

Although Defendants argue Plaintiff cannot plead in the alternative by alleging a contractual relationship throughout the Amended Complaint, this argument is meritless.  Plaintiff may still "plead a claim for unjust enrichment in the alternative where the existence of a valid

---

[122] Defs.' Brief. 24.

[123] *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); *see also* Wis. Stat. § 802.02 (5)(b).

[124] Wis. Stat. § 802(5)(b); *see also Fireman's Fund Ins. Co. of Wis. V. Bradley Corp.*, 660 N.W.2d 666, 678 (Wis. 2003) ("Pleadings rule permit plaintiffs to plead inconsistent theories for relief.") Equitable claims based on a contract are impermissible. *Meyer v. The Laser Vision Institute*, 714 N.W.2d 223, 231 (Wis. Ct. App. 2006).

[125] *U.S. ex rel. Roach Concrete v. Veteran Pacific, J.V.*, 787 F.Supp.2d 851, 859 (E.D. Wis. 2011).

contract is questioned."[126]   Defendants have not conceded whether a valid contract existed between Plaintiff and Defendants, only stating multiple times throughout their brief that Plaintiff has *alleged* such an existence.[127]   Indeed, the cases to which Defendants cite involved parties that did not dispute the existence of an express contract.[128]   "A breach of contract claim and an unjust enrichment claim are alternative claims and, until an express enforceable contract is proven, the equitable claim of unjust enrichment is not barred."[129]   A dispute over the existence of a contract remains and Plaintiff may properly plead unjust enrichment in the alternative.[130]

## CONCLUSION

The facts alleged in the Complaint are extensive and cited to actual documents and trial testimony of Defendants' employees and representatives.  There is no lacking in this pleading of factual detail to substantiate any of the claims alleged, and if there were, an amendment is clearly not futile. Similarly, each claim asserted by Plaintiff is legally sound for the pleading stage to overcome the challenges asserted by Defendants pursuant to Rules 12(b)(6) an d12(b)(1). Defendants' request for dismissal here should therefore be denied.

Dated: July 10, 2015                               BY:  */s/Aaron N. Halstead*

---

[126] *Reid v. Unilever U.S., Inc.*, 964 F.Supp.2d 893, 923 (N.D. Ill. 2013); *see also Hickman v. Wells Fargo Bank N.A.*, 683 F.Supp.2d 779, 797 (N.D. Ill. 2010).
[127] *See* Defs.' Br. 13, 14, 15, 16, 19, 22, 24, 23, and 25.
[128] *See Martin v. LG Electronics USA*, 2015 WL 1486517, at *7-8 (W.D. Wis. Mar. 31, 2015) (noting both parties agreed an express contract existed but disputed over whether contract covered same subject matter as claim for unjust enrichment); *see also Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013) (noting unjust enrichment cannot be pled where there is an existence of an express contract that governs the parties; namely, the mortgage agreement at issue).
[129] *Baycare Health System, Inc. v. Medical Savings Ins. Co.*, 2008 WL 792061, *10 (M.D. Fla. March 24, 2008).
[130] *See Reid*, 964 F.Supp.2d at 924.

Aaron N. Halstead
**HAWKS QUINDEL S.C.**
222 W. Washington Ave, Suite 450
P.O. Box 2155
Madison, WI 53701
Telephone:  (608) 257-0040
Facisimile:  (608) 256-0236
ahalstead@hq-law.com

Daniel E. Gustafson
Jason S. Kilene
Sara J. Payne
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone:  (612) 333-8844
Facsimile:  (612) 339-6622
dgustafson@gustafsongluek.com
jkilene@gustafsongluek.com
spayne@gustafsongluek.com

Simon B. Paris
Patrick Howard
**SALTZ, MONGELUZZI, BARRETT
& BENDESKY, P.C.**
1650 Market Street, 52nd Floor
Philadelphia, PA  19103
Telephone:  (215) 496-8282
Facsimile:  (215) 496-0999
sparis@smbb.com
phoward@smbb.com

**Attorneys for Plaintiff and Proposed Classes**