IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

LA CROSSE COUNTY,
*individually, and on behalf of all others similarly situated*,

                    Plaintiff,

   v.

TRINITY INDUSTRIES, INC. and
TRINITY HIGHWAY PRODUCTS, LLC,

                    Defendants.

OPINION & ORDER

15-cv-117-jdp

Defendants Trinity Industries, Inc. and Trinity Highway Products, LLC design and manufacture highway safety equipment, including a guardrail end terminal system known as the ET Plus. In 2000, the Federal Highway Administration (FHWA) approved the ET Plus, which is now in widespread use on highways throughout the country. But in the years that followed, Trinity Industries and Trinity Highway Products changed the design of the ET Plus without informing the FHWA. The changes made the system less safe, and when they finally came to light in 2012, Trinity Industries and Trinity Highway Products found themselves on the wrong end of a *qui tam* suit in federal court. A jury ultimately returned a substantial verdict against them, but that award compensated the United States government and not other entities that had purchased ET Plus units. Plaintiff La Crosse County filed this class action lawsuit on behalf of state and local highway departments that purchased ET Plus end terminals. La Crosse County asserts claims for declaratory judgment, design defect, deceptive trade practices, false advertising, breach of contract, breach of warranty, and unjust enrichment.

Trinity Industries and Trinity Highway Products have moved to dismiss La Crosse County's amended complaint, contending that the court lacks subject matter jurisdiction and that La Crosse County has failed to state claims upon which relief can be granted. The court will grant the motion to dismiss in part. La Crosse County's claims for breach of warranty will survive, as will its claims for deceptive trade practices and false advertising. And La Crosse County's claim in the alternative for unjust enrichment will proceed for now. But the court will dismiss the remaining claims in the amended complaint. The court will also decline to stay this case pending an appeal in the *qui tam* suit.

ALLEGATIONS OF FACT

The court draws the following facts from the allegations in La Crosse County's amended complaint, Dkt. 32, accepting them as true for purposes of reviewing the motion to dismiss. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010). The parties also refer to documents discussed in the amended complaint and to judicially noticeable materials from the records of other lawsuits. The court can consider these materials without converting the motion to dismiss into a motion for summary judgment. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012).

Trinity Industries is a Delaware corporation with its principal place of business in Dallas, Texas. Trinity Highway Products is a Delaware limited liability company (La Crosse County has not identified the company's members or their citizenships). The court will refer to both of these defendants, collectively, as "Trinity."

Trinity manufactures and sells highway safety equipment. This case is about Trinity's ET-Plus system, which is a patented guardrail end terminal for which Trinity holds the

exclusive license to manufacture. The ET Plus is designed to reduce damage or injury that could occur when a vehicle crashes into the end of a guardrail. The system has four basic sections: (1) an impact plate; (2) a deflector; (3) an extruder throat or extruder chamber; and (4) a feeder chute or feeder channel. The system attaches to the end of a standard "W beam" style guardrail, as depicted below and in La Crosse County's amended complaint:



Dkt. 32, figure 1 (depicting an ET Plus unit installed on the left side of a road).

When a vehicle collides with the impact plate, the entire assembly is designed to move with the car along the guardrail. The guardrail passes through the feeder channel, flattening out of its W shape and curling into a ribbon away from the vehicle. This sliding design absorbs the vehicle's energy without causing a severe impact that could injure the vehicle's occupants. Most important, it prevents the guardrail from impaling the vehicle. The FHWA, an agency within the United States Department of Transportation, approved the ET Plus system in 2000. The Wisconsin Department of Transportation approved the ET Plus system as well, once Trinity submitted proof that the FHWA had approved it. This approval meant that the ET Plus system could be used on Wisconsin roadways.

3

Between 2002 and 2005, Trinity modified the ET Plus system. Among other changes, the new design narrowed the feeder channel from five inches to four inches. That change saved Trinity $2.00 per unit, with an estimated total savings of $250,000 over five years. But the changes also made the product more dangerous. The narrower (and also shorter) feeder channel would sometimes prevent the guardrail from feeding through properly. This resulted in "throat lock," meaning that the impact plate would get stuck as it slid down the guardrail. Rather than absorbing the impact of a wayward vehicle, a locked-up system would cause the guardrail to double over on itself or spear through the vehicle and endanger its occupants.

Trinity did not seek the FHWA's approval for this design modification, nor did Trinity include the change in a 2005 submission to the FHWA that disclosed eight other changes. Yet Trinity continued to certify to its customers that the ET Plus system had been tested and approved according to the FHWA's standards. The company has sold thousands of modified units since 2005.

The FHWA learned of Trinity's modifications in January 2012, and the agency scheduled a meeting with Trinity for February 14, 2012. During the meeting, Trinity admitted that it had narrowed the feeder channel to four inches, indicating that the change was a "detail inadvertently omitted" from earlier submissions to the FHWA. *Id.* ¶ 55. But Trinity affirmatively represented that the four-inch design had passed crash tests in 2005. Based on these representations—which La Crosse County alleges were false—the FHWA issued a memorandum in June 2014, indicating that the ET Plus system had an "unbroken chain of eligibility" since 2005. *Id.*

In March 2012, Joshua Harman (who is not a party to this suit) filed a *qui tam* action alleging that Trinity had defrauded the federal government by not disclosing its design

changes.[1] The case proceeded to trial, and a jury found that Trinity made false claims to the government regarding the safety of the ET Plus system. The court entered final judgment in favor of the United States and Harman, and Trinity appealed. Since the jury's verdict, 42 states and the province of Quebec have banned installations of the ET Plus system on their roadways. Wisconsin did so in November 2014, but is now considering whether to re-add the ET Plus system to its approval list. The FHWA also investigated and re-tested the system. But the agency concluded that the four-inch design met the appropriate safety criteria and was eligible for federal-aid reimbursement. *See* Federal Highway Administration, *FHWA Review of ET-Plus*, https://www.fhwa.dot.gov/guardrailsafety/index.cfm (last updated Jan. 6, 2016).

Entities that purchased the modified ET Plus system, like La Crosse County, did not recover damages as part of the *qui tam* action. Thus, on February 25, 2015, La Crosse County filed a products liability suit in this court alleging claims individually and on behalf of both a statewide class and a nationwide class. After Trinity moved to dismiss the initial complaint, La Crosse County filed an amended complaint. Dkt. 32. Trinity has now moved to dismiss the amended complaint. Dkt. 36.

The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(d). La Crosse County has not properly pleaded Trinity Highway Products's citizenship. But Trinity Industries and at least one member of the proposed plaintiff class are citizens of different states, and the amount in controversy exceeds $5,000,000. At this point, there is no reason to decline to exercise jurisdiction under § 1332(d)(3) or (d)(4).

---

[1] *United States ex rel. Harman v. Trinity Indus., Inc.*, No. 12-cv-089 (E.D. Tex. filed Mar. 6, 2012). The court will refer to this case as "*Harman*."

ANALYSIS

La Crosse County's amended complaint alleges eight claims against Trinity:

1. Declaratory relief under 28 U.S.C. § 2201 *et seq.*, on behalf of a nationwide class;

2. Strict liability design defect, on behalf of a nationwide class;

3. Breach of contract, on behalf of a statewide class;

4. Violations of the Wisconsin Deceptive Trade Practices Act (DTPA), Wis. Stat. § 100.18, on behalf of a statewide class;

5. False advertising, on behalf of a statewide class;

6. Breach of express warranty, on behalf of a statewide class;

7. Breach of implied warranties of merchantability and fitness for a particular purpose, on behalf of a statewide class; and

8. In the alternative, unjust enrichment, on behalf of nationwide and statewide classes.

Trinity has moved to dismiss each of these claims, invoking Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Trinity contends that La Crosse County lacks standing to pursue class claims on behalf of a nationwide class and that the court therefore lacks subject matter jurisdiction over Claims 1, 2, and 8. On the merits, Trinity contends that La Crosse County has failed to state any claim upon which relief can be granted and that the court should therefore dismiss the entire amended complaint. As an alternative to dismissal, Trinity moves the court to stay this case pending its appeal in *Harman*. Dkt. 38.

After reviewing the amended complaint and the parties' submissions, the court will grant Trinity's motion to dismiss in part. Trinity's challenge to subject matter jurisdiction is not persuasive. But La Crosse County has failed to allege facts that would entitle it to relief on any but its breach of warranty claims and DTPA and false advertising claims. La Crosse County has not formally sought leave to amend its pleadings, but the court would not be

6

inclined to give the county a third opportunity to plead its claims. As for Trinity's motion to stay, there is no reason to keep this case on hold during the appeal in *Harman*, and so the court will deny the motion.

## A. Standing

Trinity challenges whether the court has subject matter jurisdiction over the nationwide class claims, which La Crosse County proposes to bring on behalf of "[a]ll persons or entities who purchased one or more defective ET-Plus guardrail system[s] (as defined herein) in the United States." Dkt. 32, ¶ 87. Trinity contends that La Crosse County lacks standing to represent a nationwide class because it is a Wisconsin entity alleging violations of Wisconsin law that led to damages suffered in Wisconsin. Thus, according to Trinity, the court should dismiss the amended complaint for lack of subject matter jurisdiction.

"Standing" is a misnomer because Trinity is not challenging La Crosse County's standing in the Article III sense. Instead, Trinity is trying to preempt class certification—a Rule 23 issue—by arguing that La Crosse County is not a suitable plaintiff to represent a nationwide class. The point is well-taken, given the Seventh Circuit's conclusion that "products-liability suits may not proceed as nationwide classes." *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002). But the fact "[t]hat a plaintiff's claim under his preferred legal theory fails has nothing to do with subject-matter jurisdiction." *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011) (citations and internal quotation marks omitted). Indeed, "the inherent problem with the idea of 'standing to bring a class action' is that it 'conflates the standing inquiry with the inquiry under Rule 23 about the suitability of a plaintiff to serve as a class representative.'" *Arreola v. Godinez*, 546 F.3d 788, 795 (7th Cir. 2008) (quoting *Payton v. County of Kane*, 308 F.3d 673, 677 (7th Cir. 2002)).

7

Trinity relies heavily on this court's decision in *Martin v. LG Electronics USA, Inc.*, No. 14-cv-83, 2015 WL 1486517 (W.D. Wis. Mar. 31, 2015), to argue that the court can consider La Crosse County's standing to pursue class claims as "logically antecedent" to the question of class certification. *See* Dkt. 37, at 15 n.4. However, the procedural posture in *Martin* makes that case distinguishable: there, the plaintiff had already filed a motion for class certification, and the court addressed that motion at the same time as the defendants' motions to dismiss. 2015 WL 1486517, at *1.

"Plaintiffs have standing if they have been injured, the defendants caused that injury, and the injury can be redressed by a judicial decision." *Morrison*, 649 F.3d 533, 536 (7th Cir. 2011). La Crosse County has alleged each of these elements: it purchased products that were not as safe as advertised, Trinity manufactured and sold those products, and the court can order Trinity to compensate La Crosse County for its losses. Trinity's challenge to class action standing—which is actually a challenge to whether La Crosse County is a suitable class representative—is premature. The court will deny Trinity's motion to dismiss the amended complaint for lack of subject matter jurisdiction.

## B.  Failure to state a claim upon which relief can be granted

Trinity moves to dismiss all eight claims in the amended complaint pursuant to Rule 12(b)(6). In reviewing Trinity's motion to dismiss for failure to state a claim, the court construes the amended complaint in the light most favorable to La Crosse County, accepting the well-pleaded facts as true and drawing all reasonable inferences in La Crosse County's favor. *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 504 (7th Cir. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "To survive a motion to dismiss, the complaint must contain enough facts to state a claim for relief that is plausible on its face." *Id.*

8

Trinity presents specific merits-based challenges to all eight of La Crosse County's claims. Trinity also presents two general challenges to the entire amended complaint, contending that La Crosse County's claims are barred by the applicable statutes of limitations and repose, and that La Crosse County has failed to allege recoverable damages. The court will address Trinity's contentions in turn.

### 1. Claim 1: declaratory judgment

In Claim 1, La Crosse County "seeks a declaration that the ET-Plus end terminals sold after Trinity's undisclosed design changes are defective in their design, material, labeling, and warranties." Dkt. 32, ¶ 110. Trinity contends that La Crosse County has failed to allege facts showing that there is an actual controversy between the parties and that the claim for declaratory relief is duplicative of the strict liability design defect claim. Dkt. 37, at 17-19.

"By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). This means that district courts have discretion when deciding whether to hear claims for declaratory relief. *Id.* at 288-90.

The court will exercise its discretion to decline to hear La Crosse County's claim for declaratory relief. Notwithstanding La Crosse Count's lofty goal of "settling the liability issue on a nationwide basis," Dkt. 42, at 19, there are several reasons why this case is a poor candidate for such sweeping declaratory relief. First, for reasons explained below, the court concludes that La Crosse County has failed to state claims for strict liability design defect. With these claims out of the case, it would be odd for the court to require the parties to still address whether the ET Plus system was, in fact, defective.

Second, as much as La Crosse County may think that it is efficient to resolve the issue of defectiveness on a national scale, the Seventh Circuit does not appear to agree. *See In re Bridgestone*, 288 F.3d at 1015 ("[P]roducts-liability suits may not proceed as nationwide classes."). In makes little sense to keep the claim for declaratory relief now, only to effectively dismiss it at the class certification stage.

Third, "[a] long line of cases in Wisconsin state that courts may decline to award declaratory relief where alternative remedies exist. . . . In this case, plaintiff has asserted a claim for breach of contract that will resolve the same issue as [its] claim for declaratory relief." *Aslanukov v. Am. Express Travel Related Servs. Co.*, 426 F. Supp. 2d 888, 890-91 (W.D. Wis. 2006). La Crosse County has not demonstrated any practical difference between declaratory relief and a judgment in its favor on the substantive claims in the amended complaint.

The court will grant Trinity's motion to dismiss Claim 1.

### 2. Claim 2: strict liability design defect

In Claim 2, La Crosse County seeks damages for "the decreased value of the guard rails" that it ordered, "[t]he safety and feasibility [of which] must now be studied, inspected, tested, and potentially each unit must be replaced." Dkt. 32, ¶ 121. Trinity contends that the economic loss doctrine bars La Crosse County from recovering these damages in tort because they are economic losses. The court agrees and will grant Trinity's motion to dismiss Claim 2.

In Wisconsin, the economic loss doctrine prevents a plaintiff from claiming tort damages (e.g., through a strict liability design defect claim) for purely economic losses when the underlying wrongful conduct is a breach of a contract between the parties. *Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶ 24, 270 Wis. 2d 146, 677 N.W.2d 233. As relevant in

10

this case, the doctrine precludes recovery for "the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold." *Northridge Co. v. W.R. Grace & Co.*, 162 Wis. 2d 918, 471 N.W.2d 179, 181 (1991). That is essentially what La Crosse County is alleging in this case: it purchased ET Plus units expecting that they would function as promised, but the products failed to meet those expectations.

There are three exceptions to the economic loss doctrine. First, the "fraudulent inducement" exception exists when a party suffers a loss "extraneous" to the contract. *Kaloti Enters., Inc. v. Kellogg Sales Co.*, 2005 WI 111, ¶ 42, 283 Wis. 2d 555, 699 N.W.2d 205. For this exception to apply, the alleged fraud cannot be interwoven with the parties' agreement. *Digicorp, Inc. v. Ameritech Corp.*, 2003 WI 54, ¶ 3, 262 Wis. 2d 32, 662 N.W.2d 652. Stated another way, the fraud must concern a risk that does "not relate to the quality or the characteristics of the goods for which the parties contracted." *Kaloti Enters., Inc.*, 2005 WI 111, ¶ 42. That is not the case here, and the exception does not apply

The second exception is the "services" exception, which applies if a service is the predominant purpose of a mixed contract for the sale of goods and services. *See Linden v. Cascade Stone Co.*, 2005 WI 113, ¶ 8, 283 Wis. 2d 606, 699 N.W.2d 189. La Crosse County does not dispute that it purchased goods from Trinity and not services.

The third exception is the noneconomic loss exception—sometimes referred to as the "other property exception." *See, e.g., Hackel v. Nat'l Feeds, Inc.*, 986 F. Supp. 2d 963, 974 (W.D. Wis. 2013). It, too, does not apply in this case. This exception is a narrow one: it permits a plaintiff to recover damages when "a defect in the product has caused physical harm to property, property other than the product itself." *Digicorp, Inc.*, 2003 WI 54, ¶ 41

(citations an internal quotation marks omitted). La Crosse County contends that the costs associated with inspecting and replacing defective ET Plus units are not damages caused by the product's failure; rather, these are costs incurred because the delivered product differed from the advertised product. This argument draws a distinction where none exists. Wisconsin courts apply "the economic loss doctrine [to] preclude[] recovery in tort for economic losses resulting from the failure of a product to live up to a contracting party's expectations." *Tietsworth*, 2004 WI 32, ¶ 24. La Crosse County was not satisfied with the ET Plus units that it received, and the county has incurred (or will incur) costs to fix the problem. These are economic losses, for which La Crosse County's remedy lies in contract law.[2]

Because none of the exceptions apply, the economic loss doctrine precludes La Crosse County from recovering tort damages for the allegedly defective ET Plus units. The court will grant Trinity's motion to dismiss Claim 2.

### 3.   Claim 3: breach of contract

In Claim 3, La Crosse County alleges that Trinity breached the parties' sales contract by delivering a product that was not federally approved. Dkt. 32, ¶¶ 124-25. Trinity contends that under Wisconsin's Uniform Commercial Code, a buyer must either reject purchased goods or revoke its acceptance of those goods before filing a breach of contract claim.[3]

---

[2] La Crosse County analogizes this case to *Triad Group, Inc. v. Vi-Jon, Inc.*, in which a federal court in Wisconsin declined to apply the economic loss doctrine to bar tort claims. 870 F. Supp. 2d 645, 650-51 (E.D. Wis. 2012). But as La Crosse County's own recitation of the facts of *Triad Group* confirms, Dkt. 42, at 24, that case did not involve a plaintiff who "complain[ed] that the end product manufactured by [the defendant] was defective or insufficient—in fact, *the end product was simply never completed*." *Triad Grp.*, 870 F. Supp. 2d at 651 (original emphasis). Here, in contrast, La Crosse County actually received a product, albeit an allegedly defective product. *Triad Group* does not support La Crosse County's effort to avoid the economic loss doctrine.

[3] Trinity assumes that Wisconsin law governs the parties' sales contract. Dkt. 37, at 22 n.5.

Because the amended complaint does not allege rejection or revocation, the court will dismiss La Crosse County's breach of contract claim.

La Crosse County did not reject the ET Plus units that it purchased from Trinity. *See* Dkt. 42, at 16; Wis. Stat. § 402.607(2) ("Acceptance of goods by the buyer precludes rejection of the goods accepted."). Instead, La Crosse County contends that it revoked its acceptance after learning about the alleged defects. Under Wis. Stat. § 402.608(2), revocation "is not effective until the buyer notifies the seller of it." La Crosse County does not allege that it told Trinity that it was revoking its acceptance of the ET Plus units. To the contrary, the amended complaint suggests that La Crosse County is *still using* some or all of the units. *See* Dkt. 32, ¶ 72 ("Plaintiff intends to replace all ET-PLUS end terminal systems on its roadways as soon as it has available funds to do so. Plaintiff estimates it will cost approximately $42,255.92 to replace the fourteen ET-Plus systems installed on its roads.").

La Crosse County argues that no notice was required in this case. The county relies on *Muehlbauer v. General Motors Corporation*, which, in turn, relied on an Illinois court's holding that "direct notice is not required when the seller actually knows about the defect of a particular product, or the seller is reasonably notified by the filing of the buyer's complaint." 431 F. Supp. 2d 847, 858 (N.D. Ill. 2006) (discussing *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 675 N.E.2d 584, 590-91 (1996)). But as Trinity correctly responds, the issue in those cases was whether the buyer gave the seller notice of a breach of warranty, not notice of revocation. *See id.* at 857-58; *Connick*, 675 N.E.2d at 589.

Even construing the amended complaint in La Crosse County's favor, there is simply no allegation that the county notified Trinity that it was revoking its acceptance of the

La Crosse County assumes so as well. Dkt. 42, at 16-17.

defective ET Plus units. If anything, the amended complaint confirms that La Crosse County could not have revoked its acceptance because it is still using the ET Plus units. A buyer must revoke its acceptance of goods before suing for a breach of contract arising from nonconforming goods. Wis. Stat. § 402.711. La Crosse County has not alleged revocation, and so the court will grant Trinity's motion to dismiss Claim 3.

### 4. Claims 4 and 5: DTPA and false advertising

In Claims 4 and 5, La Crosse County alleges that Trinity violated Wis. Stat. § 100.18 by falsely representing that the FHWA had approved the ET Plus system. Dkt. 32, ¶¶ 135-36, 140-41. It is not clear that these claims are actually distinct: both claims allege violations of § 100.18 based on Trinity's allegedly false representations, and both claims allege that these false representations induced La Crosse County to purchase ET Plus units. *See id.* The parties appear to treat the claims as one, analyzing them together under the same standard. The court will do so as well.[4]

Claims under Wis. Stat. § 100.18 have three elements: (1) the defendant made a representation to "the public" with the intent to induce an obligation; (2) the representation was "untrue, deceptive or misleading"; and (3) the representation materially caused a pecuniary loss to the plaintiff. *Grice Eng'g, Inc. v. JG Innovations, Inc.*, 691 F. Supp. 2d 915, 922 (W.D. Wis. 2010) (citing *Novell v. Migliaccio*, 2008 WI 44, ¶ 49, 309 Wis. 2d 132, 749 N.W.2d 544).

Trinity contends that the court must dismiss the § 100.18 claims because: (1) La Crosse County has not satisfied Rule 9(b)'s heightened pleading requirements; (2) La Crosse

---

[4] Should this case proceed to dispositive motions, the court will expect La Crosse County to explain if, and how, these claims are actually distinct.

County was not a member of "the public," as § 100.18 requires; and (3) a failure to disclose is not the same as an affirmative misrepresentation, which § 100.18 also requires. The court concludes that the amended complaint satisfies Rule 9(b). The court also concludes that, at this point, the complaint plausibly alleges facts from which to infer that La Crosse County was a member of the public and that Trinity affirmatively misrepresented to La Crosse County that the FHWA had certified the ET Plus system.

### a. Rule 9(b)

Rule 9(b) requires a party alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake." The precise level of particularity that Rule 9(b) requires will vary from case to case, but a plaintiff must usually describe "the who, what, when, where, and how of the fraud." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (citations and internal quotation marks omitted). Requiring this level of particularity "force[s] the plaintiff to do more than the usual investigation before filing his complaint." *Id.* (citations and internal quotation marks omitted). La Crosse County does not dispute that these heightened pleading requirements apply to Claims 4 and 5. Dkt. 42, at 10-11; *see also Am. Orthodontics Corp. v. Epicor Software Corp.*, 746 F. Supp. 2d 996, 999 (E.D. Wis. 2010) (applying Rule 9(b) to a DTPA claim). But La Crosse County contends that the amended complaint gives Trinity notice of specific fraudulent actions by recounting some of the evidence presented in *Harman*.

Given the unusual circumstances of this case, it makes sense to allow La Crosse County to satisfy Rule 9(b) by generally referring to evidence from the *qui tam* action that gave rise to this suit. With the benefit of this allowance, the amended complaint passes muster under Rule 9(b).

### b. Member of "the public"

Trinity contends that La Crosse County has failed to state a claim under § 100.18 because the amended complaint affirmatively demonstrates that La Crosse County was not a member of "the public." The Wisconsin Supreme Court has emphasized that the "important factor" in determining when a representation is made to a member of the public "is whether there is some particular relationship between the parties." *State v. Automatic Merchandisers of Am., Inc.*, 64 Wis. 2d 659, 221 N.W.2d 683, 686 (1974). For example, "a plaintiff is no longer a member of 'the public' for the purpose of Wis. Stat. § 100.18(1) once he or she has entered into a contract to purchase the offered item." *K & S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*, 2007 WI 70, ¶ 26, 301 Wis. 2d 109, 732 N.W.2d 792.[5] Thus, any misrepresentations to La Crosse County about the ET Plus units that occurred after La Crosse County had entered into a contract to buy them would not have been representations to the public. *See Waukesha County v. Nationwide Life Ins. Co.*, No. 06-cv-656, 2007 WL 902243, at *4 (W.D. Wis. Mar. 21, 2007).

It is also relevant that § 100.18 has a three-year statute of repose. Wis. Stat. § 100.18(11)(b)(3); *Kain v. Bluemound E. Indus. Park, Inc.*, 2001 WI App 230, ¶¶ 14-15, 248 Wis. 2d 172, 635 N.W.2d 640. This means that because La Crosse County filed its initial complaint on February 25, 2015, it must allege misrepresentations that occurred in 2012 or later.

---

[5] La Crosse County relies on *K & S Tool* for the proposition that whether a plaintiff is a member of the public is a question of fact. Dkt. 42, at 12. But the court in *K & S Tool* did not announce a blanket rule to that effect; instead, the court held that the facts of the case, which included only a telephone call between the plaintiff and the defendant, made the question one of fact and not one of law. 2007 WI 70, ¶ 30.

16

La Crosse County alleges that it began purchasing ET Plus units in 2011, pursuant to a sales contract in which Trinity offered to sell federally approved ET Plus end terminals at a specified price. Dkt. 32, ¶¶ 9, 124. But the parties have not filed copies of their sales contract (or contracts), nor have they described the specifics of their contractual relationship. Although the amended complaint alleges that at least one contract existed, it is not clear that all of La Crosse County's purchases in 2012 and 2014 were pursuant to that one contract. The more reasonable inference is that the parties did not have an ongoing contractual relationship and that each of La Crosse County's purchases arose from separate contracts.

Trinity does not identify authority to support a blanket rule that once two parties have entered into a contract, they forever have a "particular relationship" that would preclude claims under § 100.18. Instead, Wisconsin law limits the bar on such claims to post-contractual representations about the subject of the contract. *See Kailin v. Armstrong*, 2002 WI App 70, ¶ 44, 252 Wis. 2d 676, 643 N.W.2d 132. This limit makes sense, given the law's purpose of protecting individuals from untrue or misleading promotional statements about a product: there is no need to protect an individual from false statements about a product once that individual has already agreed to purchase it.

Under the standards for reviewing a motion to dismiss pursuant to Rule 12(b)(6), the court cannot definitively conclude that La Crosse County was not a member of the public when Trinity falsely represented in 2012 and 2014 that the FHWA had certified the ET Plus system. The evidence may ultimately make this issue amendable to resolution at summary judgment. But at this point, the court will not dismiss La Crosse County's § 100.18 claims.

### c. Misrepresentations

Trinity also contends that its failure to disclose the changes to the ET Plus system were not "representations" that give rise to liability under § 100.18. According to Trinity, La Crosse County has improperly premised its § 100.18 claims on Trinity's failure to disclose its design changes to the FHWA or to La Crosse County. And because "[a] nondisclosure is not an 'assertion, representation or statement of fact' under Wis. Stat. § 100.18(1)," *Tietsworth*, 2004 WI 32, ¶ 40, Trinity contends that the court should dismiss these claims.

Trinity misunderstands the nature of La Crosse County's § 100.18 claims. The amended complaint alleges that Trinity falsely certified that the FHWA had approved the ET Plus system and that the product complied with applicable safety standards. Dkt. 32, ¶¶ 135, 141. These were affirmative misrepresentations that Trinity allegedly made to La Crosse County each time that it sold the county an ET Plus unit. *Id.* ¶¶ 50, 73. La Crosse County has adequately pleaded this element of its § 100.18 claims.

### 5. Claims 6 and 7: breach of warranty

In Claims 6 and 7, La Crosse County alleges that Trinity breached express warranties and implied warranties of merchantability and fitness for a particular purpose. These claims arise out of Trinity falsely warranting that the ET Plus system had been approved by all applicable regulatory authorities, was fit for its intended use, and was free from defect. *Id.* ¶¶ 145-46, 158, 164. Trinity's only ground for dismissing these claims is that the amended complaint fails to comply with Rule 9(b). But as explained above, the amended complaint alleges how Trinity defrauded its customers, which warranties were untrue, and when the relevant events occurred. With the benefit of all reasonable inferences drawn in La Crosse

County's favor, these allegations satisfy Rule 9(b)'s heightened pleading requirements. The court will deny Trinity's motion to dismiss Claims 6 and 7.

### 6. Claim 8: unjust enrichment

La Crosse County has pleaded Claim 8 in the alternative, alleging that Trinity was unjustly enriched by its deceptive and unlawful conduct. *Id.* ¶ 169. But under Wisconsin law, "an express contract [precludes] recover[y] under the quasi-contractual doctrines of quantum meruit or unjust enrichment." *Carroll v. Stryker Corp.*, 658 F.3d 675, 684 (7th Cir. 2011). La Crosse County has affirmatively alleged the existence of an enforceable contract. *See, e.g.*, Dkt. 32, ¶¶ 124 ("A valid sales contract existed between Plaintiff and Defendants."), 147 (referring to "express warranties").

At this point in the case, dismissing Claim 8 makes little practical sense. Much like the cases on which Trinity relies, the court would have to dismiss this claim without prejudice and allow La Crosse County to reinstate it later, should the court determine that no contract exists between the parties. *See, e.g.*, *Harley Marine Servs., Inc. v. Manitowoc Marine Grp., LLC*, 759 F. Supp. 2d 1059, 1063 (E.D. Wis. 2010). The rationale for this approach is that dismissing non-viable claims now will set bounds on discovery and save the parties from needlessly pursuing a claim that will eventually get dropped from the case. *Id.*

But dismissing Claim 8 now creates the risk that the court may have to reinstate it later. That would likely require allowing the parties to conduct additional discovery, which could in turn require bumping back existing deadlines and delaying this case. And that is why this court has routinely taken a different approach to alternative unjust enrichment claims, often refusing to dismiss them even when the complaint pleads the existence of a valid contract. *See, e.g.*, *Seed v. Vannet*, No. 09-cv-309, 2009 WL 5216937, at *4 (W.D. Wis. Dec.

22, 2009); *Diamond Ctr., Inc. v. Leslie's Jewelry Mfg. Corp.*, 562 F. Supp. 2d 1009, 1017 (W.D. Wis. 2008). Keeping Claim 8 for now—with the understanding that the court will dismiss it if the parties in fact had an enforceable contract—imposes minimal marginal cost; it will require the parties to add little, if anything, to their already ongoing discovery efforts. The court will deny Trinity's motion to dismiss Claim 8.

### 7.  Statutes of limitations and repose

Trinity moves the court to dismiss: "(1) all breach of contract and breach of warranty claims accruing prior to February 25, 2009; (2) all consumer fraud claims accruing prior to February 25, 2012; and (3) all unjust enrichment and design defect claims accruing prior to February 25, 2009." Dkt. 37, at 32. According to Trinity, these claims are all barred by the applicable statutes of limitations and repose. La Crosse County responds that none of its claims fall into these categories: it is alleging unlawful acts that occurred in 2011, 2013, and 2014. Dkt. 42, at 25. Because La Crouse County has limited its claims to these periods, there are no claims that require dismissal because they involve conduct for which a statute of limitations or repose has run. The court will deny this aspect of Trinity's motion to dismiss.

### 8.  Damages

Trinity also moves the court to dismiss the entire complaint because La Crosse County has failed to plead recoverable damages. As Trinity views the case, none of the ET Plus units that La Crosse County purchased have malfunctioned. Nor have they shown signs of defect. Thus, Trinity contends that La Crosse County has not incurred any damages.

Trinity analogizes this case to *In re Bridgestone*, which involved class claims brought by owners of SUVs with tires that had an abnormally high failure rate. 288 F.3d at 1015. But the class members had not experienced these failures themselves; their tires had performed

properly, and they sought damages for the *risk* of failure, which diminished the resale value of their cars and caused emotional distress. *Id.* The Seventh Circuit was skeptical about the viability of the class action claims, commenting that:

> Plaintiffs describe the injury as financial rather than physical and seek to move the suit out of the tort domain and into that of contract (the vehicle was not the flawless one described and thus is not merchantable, a warranty theory) and consumer fraud (on the theory that selling products with undisclosed attributes, and thus worth less than represented, is fraudulent). It is not clear that this maneuver actually moves the locus from tort to contract. If tort law fully compensates those who are physically injured, then any recoveries by those whose products function properly mean excess compensation. As a result, most states would not entertain the sort of theory that plaintiffs press.

*Id.* at 1017. At least one district court in this circuit has cited *In re Bridgestone* to support dismissing breach of warranty claims that are based on products being less valuable than advertised. *See, e.g., Jasper v. Abbott Labs., Inc.*, 834 F. Supp. 2d 766, 774 (N.D. Ill. 2011) ("[The plaintiff] has not adequately alleged a breach of warranty because she has not adequately alleged that her [product] was defective.").

The court is not persuaded that La Crosse County's damages are unrecoverable as a matter of law. For the breach of warranty claims, the Wisconsin Supreme Court has recognized that "plaintiffs may have contract remedies—breach of contract/warranty or rescission and restitution—but may not pursue a tort claim for misrepresentation premised on having purchased allegedly defective motorcycles." *Tietsworth*, 2004 WI 32, ¶ 37; *see also State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.*, 225 Wis. 2d 305, 592 N.W.2d 201, 216 (1999) ("When a product fails to operate as warranted or as a consumer expected, the proper avenue for relief is a breach-of-warranty claim."). And for the DTPA and false advertising claims, § 100.18 permits a plaintiff to recover damages for pecuniary losses.

La Crosse County alleges that Trinity falsely represented that the FHWA had approved the ET Plus system and that the product complied with all applicable safety regulations. The county also alleges that it would not have purchased the ET Plus units without Trinity's representations and that it must now replace the units with certified safety equipment. Permitting recovery for the cost of replacement allows La Crosse County to receive the benefit of its bargain. *Cf. Leaf Funding, Inc. v. Cool Exp. Wis., Inc.*, No. 07-cv-589, 2009 WL 330157, at *4 (W.D. Wis. Feb. 9, 2009) ("If the party does not receive the contracted-for-benefit, then the breach is material and the injured party is entitled to damages."). La Crosse County has alleged recoverable damages, which is all that it must do at this point. The court will deny this aspect of Trinity's motion to dismiss.

## C.  Leave to amend

Although La Crosse County has not formally moved for leave to amend, portions of its opposition to Trinity's motion to dismiss ask the court to grant leave to amend rather than dismiss any claims. *See, e.g.*, Dkt. 42, at 4 n.13, 11 n.50, 17, 27. But based on the circumstances of this case and the reasons that the court has given for dismissing most of La Crosse County's claims, the court is not inclined to grant leave to amend.

This was Trinity's second motion to dismiss, and it raised substantially the same arguments that the first motion raised. Yet despite having the benefit of a detailed description of the deficiencies in its initial pleadings, many of La Crosse County's amended claims failed to overcome those deficiencies. Trinity has pointed out fundamental legal deficiencies in Trinity's theory of the case. This factor weighs against granting leave to amend the complaint again.

Another round of amended pleadings would also delay the case. Inviting a third complaint would likely lead to a third motion to dismiss, which would require more briefing and jeopardize the calendar for the case. Although Trinity can hardly claim prejudice from the delay (remember that Trinity has moved to stay the case pending its appeal in *Harman*), the court is mindful of its Rule 1 obligation "to secure the just, speedy, and inexpensive determination of every action and proceeding."

Additional factual allegations would not salvage the now-dismissed claims. The economic loss doctrine bars La Crosse County's strict liability claims, and the claims for declaratory relief are unnecessary. Perhaps La Crosse County could allege facts showing that it revoked its acceptance of the ET Plus units, which might revive its breach of contract claims. But that seems highly unlikely because La Crosse County affirmatively alleges that it is still using the units that it purchased.

Amendment would unnecessarily delay this case, and it would likely be futile. Given that La Crosse County has twice failed to plead viable claims for strict liability, breach of contract, and declaratory relief, the court is not persuaded that a third opportunity will yield a different result.

## D. Motion to stay

As an alternative to dismissal, Trinity moves to stay this case pending its appeal in *Harman*. Dkt. 38. Trinity contends that a stay is warranted because a successful appeal will negate the factual predicate for La Crosse County's entitlement to relief: whether Trinity falsely certified that the ET Plus system met federal crash test criteria and had FHWA approval. Trinity also contends that a stay will give the Wisconsin Department of

23

Transportation time to retest the ET Plus system and determine whether it is approved for installation in Wisconsin.

Courts have authority to stay cases in the interest of judicial economy. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Although the decision to stay is discretionary, there are limits to the court's discretion: "the general test for imposing a stay requires the court to 'balance interests favoring a stay against interests frustrated by the action' in light of the court's strict duty to exercise jurisdiction in a timely manner." *Grice Eng'g, Inc.*, 691 F. Supp. 2d at 920 (quoting *Cherokee Nation of Oklahoma v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997)). The relevant factors to consider include whether: (1) the litigation is at an early stage; (2) a stay will unduly prejudice or tactically disadvantage the non-moving party; (3) a stay will simplify the issues in question and streamline the trial; and (4) a stay will reduce the burden of litigation on the parties and on the court. *Id.*

Here, the stage of the litigation is a mostly neutral factor. The parties have just begun discovery, and the court has not yet taken up the issue of class certification. But liability expert reports are due in three months and dispositive motions are due in six months. We are not on the eve of trial, but the case is certainly not in its infancy.

The remaining factors weigh against staying the case. La Crosse County alludes only vaguely to the danger of losing evidence and to the fact that a stay gives Trinity a tactical advantage. Dkt. 43, at 6. But cases can become more difficult to try as time passes because memories fade and evidence gets misplaced. Although the prejudice to La Crosse County is no greater than the prejudice that any plaintiff experiences when it must wait to obtain the relief that it seeks, this factor still tips against a stay.

24

The principal reason to deny Trinity's motion to stay, however, is because it is not clear that the appeal in *Harman* will have a material effect on this case. The court is permitting La Crosse County to proceed with claims for violations of § 100.18 and breach of warranty (and, in the alternative, unjust enrichment). These claims will turn on whether Trinity falsely represented to La Crosse County and a statewide class of plaintiffs that the ET Plus system was approved for installation on state highways and had been approved by all applicable regulatory authorities. These are not the issues in *Harman*, which appears to be a case about whether Trinity made misstatements *to the FHWA*. Moreover, any decision in *Harman* would be persuasive precedent only, with no binding effect in this case. *Cf. Hy Cite Corp. v. Regal Ware, Inc.*, No. 10-cv-168, 2010 WL 2079866, at *1 (W.D. Wis. May 19, 2010).

As for Trinity's arguments regarding the Wisconsin Department of Transportation, they are irrelevant. The state agency's determination could change the nature and scope of La Crosse County's possible recovery. But that would be an ancillary matter, with no effect on the factual issues that La Crosse County's claims present.

The court is not persuaded that a stay is appropriate in this case. Trinity's motion is therefore denied.

## E. Conclusion

To briefly summarize, La Crosse County has standing to pursue its claims, and the court has subject matter jurisdiction over this case. Those aspects of Trinity's motion to dismiss are denied. La Crosse County has adequately pleaded claims for violations of § 100.18, breach of express warranty, and breach of implied warranties, as well as a claim in the alternative for unjust enrichment. La Crosse County has also adequately alleged

25

recoverable damages for these claims. Trinity's motion to dismiss Claims 4, 5, 6, 7, and 8 is denied.

The rest of Trinity's motion to dismiss is granted. Claims 1, 2, and 3 are dismissed for failure to state a claim upon which relief can be granted.

Finally, Trinity's motion to stay is denied. This case will proceed as scheduled, with all existing deadlines remaining firmly in place.

## ORDER

IT IS ORDERED that:

1. Defendants Trinity Highway Products LLC and Trinity Industries, Inc.'s motion to dismiss, Dkt. 36, is GRANTED in part and DENIED in part, as explained above. Claims 1, 2, and 3 in the amended complaint, Dkt. 32, are DISMISSED with prejudice, for failure to state a claim upon which relief can be granted.

2. Defendants' motion to stay, Dkt. 38, is DENIED.

Entered March 31, 2016.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge